IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ELLIS F. LALAU, | ) | CIVIL NO. 06-00414 JMS/LEK |
| | ) | |
| Plaintiff, | ) | ORDER: (1) GRANTING HAWAII |
| | ) | STEVEDORES, INC.'S MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT; |
| | ) | (2) GRANTING INTERNATIONAL |
| HAWAII STEVEDORES, INC.; | ) | LONGSHORE & WAREHOUSE |
| INTERNATIONAL LONGSHORE & | ) | UNION, LOCAL 142'S MOTION FOR |
| WAREHOUSE UNION, LOCAL 142; | ) | SUMMARY JUDGMENT; |
| AND JOHN DOES 1-10, | ) | (3) DENYING PLAINTIFF'S CROSS- |
| | ) | MOTION FOR SUMMARY |
| Defendants. | ) | JUDGMENT; AND (4) DENYING |
| | ) | HAWAII STEVEDORES, INC.'S |
| _____ | ) | MOTION FOR RULE 11 SANCTIONS |

**ORDER: (1) GRANTING HAWAII STEVEDORES, INC.'S MOTION FOR
SUMMARY JUDGMENT; (2) GRANTING INTERNATIONAL
LONGSHORE & WAREHOUSE UNION, LOCAL 142'S MOTION FOR
SUMMARY JUDGMENT; (3) DENYING PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT; AND (4) DENYING HAWAII
STEVEDORES, INC.'S MOTION FOR RULE 11 SANCTIONS**

## I. INTRODUCTION

Plaintiff Ellis F. Lalau ("Plaintiff") asserts federal and state law

claims against his union, International Longshore and Warehouse Union, Local

142 ("ILWU") and former employer, Hawaii Stevedores, Inc. ("HSI")

(collectively, "Defendants"), based on his termination from HSI.  Currently before

the court is (1) HSI's Motion for Summary Judgment, (2) ILWU's Motion for

Summary Judgment, (3) Plaintiff's Cross-Motion for Summary Judgment, and

(4) HSI's Motion for Rule 11 Sanctions.  Based on the following, the court

GRANTS Defendants' Motions for Summary Judgment, DENIES Plaintiff's

Cross-Motion for Summary Judgment, and DENIES HSI's Motion for Rule 11

Sanctions.

## II.  BACKGROUND

### A.  Factual Background

#### 1.  *Defendants and Their Collective Bargaining Agreement*

HSI is a Honolulu-based company that employs longshore workers in

the stevedoring industry.  HSI Concise Statement of Material Facts ("SMF") 1.[1]

Defendant ILWU is a labor union that represents various HSI employees.  *Id.* at 2.

ILWU members employed by HSI are subject to a collective bargaining agreement

("CBA") between HSI and ILWU that is effective from July 1, 2002 to June 30,

2008.  *Id.* at 3.

///

///

---

[1]  Where a particular fact is not in dispute, the court cites directly to the relevant party's
SMF.  Further, unless otherwise indicated, the court cites to Defendants' exhibits submitted with
their Motions, and Plaintiff's exhibits submitted with his Opposition.

The CBA provides that a newly hired employee shall not receive seniority until the employee has completed six months of continuous service, and until that time, the employee may be summarily discharged:

> Seniority shall not apply to any newly hired employee until the employee has completed six (6) months of continuous service with the Employer.  This period of probation may be extended by mutual consent of the Employer and the Union.  An employee who has not achieved seniority status may be summarily discharged.

HSI Ex. A, § 3.03; *see also id*. § 16.02 ("Any employee who has not achieved seniority status pursuant to subsection 3.03 may be summarily discharged."); HSI SMF 6-7.

### 2.    *Plaintiff's Claims*

Plaintiff became a dues-paying member of ILWU in April 2004. Lalau Decl. ¶ 3.  In July 2005, Plaintiff received an offer for full-time employment with HSI, and started work as a basic longshore employee on August 15, 2005. *Id.*; Tamashiro Decl. ¶ 5.  To take this position, Plaintiff resigned his position with the Sheriff's Division of the Department of Public Safety, where he had worked for over 13 years.  Lalau Decl. ¶ 2.

During his employment with HSI, Plaintiff received no warnings or negative comments about his work performance; indeed, Plaintiff had been

3

complemented for doing a good job.  Lalau Decl. ¶ 5.  However, on February 14,

2006, Plaintiff was called into a meeting and told that he was being terminated for

work performance and lack of initiative.  *Id*.  Plaintiff requested to see his

personnel file, but was denied.  *Id.*  HSI asserts that it terminated Plaintiff because

he did not pass probation and had some of the lowest evaluation scores of his

probationary class.  Tamashiro Decl. ¶ 5.

       Soon after, Plaintiff contacted Tyrone Tahada, a Business Agent at

ILWU, for assistance with grieving his termination.  Lalau Decl. ¶ 6.  Tahada told

him that there was nothing Tahada or ILWU could do.  *Id.*  Tahada did, however,

ask Plaintiff who he knew and/or was related to in the company.  *Id.*  Plaintiff and

his wife also wrote letters and contacted individuals at HSI and ILWU to

reconsider Plaintiff's termination.  Lalau Decl. ¶¶ 6, 8-9.  In their letters, Plaintiff

and his wife recognized that Plaintiff was fired on his last day of probation.  *See*

Pl.'s Ex. 1, letter to Clayton Tamashiro, HSI ("I write this letter to you to ask that

you reconsider your decision to terminate me on the last day of my probation."),

letter to James Sprinosa, International President of ILWU ("On the very last day of

my probationary period, February 14, 2006, I was called into the office, after

having worked 5 hours that day, and was terminated."), letter to Wesley Furtado,

Vice President of ILWU (same); HSI Ex. 1, letter to Randy Grune, President and

CEO of HSI (same).  Plaintiff received no response to any of his letters or requests for assistance.  Lalau Decl. ¶ 9.

Despite these letters and contacts with ILWU and HSI, ILWU has no record of any formal grievance by Plaintiff.  Tahara Decl. ¶ 13.

## B.   Procedural Background

On August 1, 2006, Plaintiff filed his Complaint alleging claims against HSI for violation of the CBA, against ILWU for breach of duty of fair representation, and against both Defendants for promissory estoppel.

On February 29, 2008, HSI and ILWU filed their Motions for Summary Judgment.  On March 3, 2008, HSI filed a Motion for Rule 11 Sanctions against Plaintiff.  On April 8, 2008, Plaintiff filed a Cross-Motion for Summary Judgment, and Oppositions to Defendants' Motions for Summary Judgment and HSI's Motion for Rule 11 Sanctions.  On April 16, 2008, HSI and ILWU filed Replies in support of their motions.  On April 23, 2008, Plaintiff filed a Reply in support of his Cross-Motion.  A hearing was held on April 28, 2008.

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who

fails to make a showing sufficient to establish the existence of an element essential

to the party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 316, 321 (1986); *see also Broussard v. Univ. of*

*Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).  "In such a situation, there

can be no genuine issue as to any material fact, since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders

all other facts immaterial."  *Celotex*, 477 U.S. at 321 (internal quotations omitted).

The burden initially lies with the moving party to show that there is

no genuine issue of material fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

*Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The moving party may discharge its

burden by showing that there is "an absence of evidence to support the nonmoving

party's case."  *Celotex*, 477 U.S. at 325.  "When the moving party has carried its

burden under Rule 56(c) its opponent must do more than simply show that there is

some metaphysical doubt as to the material facts. . . . [and] come forward with

specific facts showing that there is a genuine issue for trial."  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal

quotation signals omitted).

An issue of fact is genuine "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  An issue is material if the resolution of the factual

dispute affects the outcome of the claim or defense under substantive law

governing the case.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d

912, 919 (9th Cir. 2001).  When considering the evidence on a motion for

summary judgment, the court must draw all reasonable inferences on behalf of the

nonmoving party.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV.  DISCUSSION

### A.    Claim I:  Violation of the CBA

Plaintiff's claim that HSI breached the CBA by terminating Plaintiff

without cause is brought pursuant to § 301 of the Labor Management Relations

Act ("LMRA"), 29 U.S.C. § 185.[2]  HSI argues that summary judgment should be

granted on this claim because Plaintiff was a probationary employee and could be

---

[2]  The elements of Plaintiff's § 301 claim include that (1) HSI violated the CBA, and (2) ILWU violated its duty of fair representation in handling Plaintiff's grievance.  *See Vaca v. Sipes*, 386 U.S. 171, 186 (1967) ("[W]e think the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance."); *Bliesner v. Commc'n Workers of Am.*, 464 F.3d 910, 914 (9th Cir. 2006) (noting that "breach of a duty of fair representation by the union is a necessary prerequisite to a successful suit against the employer for a breach of the CBA"); *see also Gibson v. U.S. Postal Serv.*, 380 F.3d 886, 888-89 (5th Cir. 2004) ("Hybrid § 301 actions are comprised of two elements: 1) an allegation that the employer breached the collective bargaining agreement; and 2) an allegation that the union breached its duty of fair representation." (citations omitted)).

terminated without cause.[3]  In opposition, Plaintiff argues that he had finished his

probationary period at the time he was terminated.  The court first outlines the

relevant framework for construing the CBA, interprets the phrase at issue, and

then concludes that as a matter of law Plaintiff was a probationary employee such

that HSI did not violate the CBA by terminating him.

### 1.      *Interpretation of Collective Bargaining Agreement*

A collective bargaining agreement is not always subject to the same

principles of construction that govern other contracts.  *Transportation-*

*Communication Employees Union v. Union Pac. R.R.*, 385 U.S. 157, 160-61

(1966) (noting that a CBA is not "governed by the same old common-law

concepts, which control . . . private contracts").  Traditional rules for contractual

interpretation may nonetheless be relevant, so long as their application is

consistent with federal law "fashion[ed] from the policy of our national labor

laws."  *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957)

(citations omitted).

---

[3] HSI further argues that summary judgment should be granted because ILWU did not breach its duty of fair representation, and Plaintiff did not exhaust his administrative remedies. Because the court finds that Plaintiff was a probationary employee as a matter of law, the court does not address these additional arguments. *See Bliesner*, 464 F.3d at 914 (finding that district court committed no error by not addressing breach of duty of fair representation element where it found that summary judgment should be granted on the basis that the employer did not violate the CBA).

A collective bargaining agreement "is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. . . .  It calls into being a new common law -- the common law of a particular industry or of a particular plant." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 (1960).  "In construing a collective bargaining agreement, not only the language of the agreement is considered, but also past interpretations and past practices are probative." *Univ. of Haw. Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1102 (9th Cir. 1999); *see also Cappa v. Wiseman*, 469 F. Supp. 437, 439-40 (N.D. Cal. 1979) ("Restricting the interpretation of a collective bargaining agreement to its express terms is extremely unrealistic in circumstances where, as here, the parties have not actually negotiated the agreement themselves, but have attempted to adapt the terms of an industry-wide agreement to conditions in the workplace of a relatively unique . . . independent employer."), *aff'd*, 659 F.2d 957, 960 (9th Cir. 1981) (adopting the reasoning and decision of the district court on the merits).

"Terms in a collective bargaining agreement are to be given their ordinary meaning in the absence of 'evidence indicating that the parties to this contract intended to expand or otherwise deviate from that meaning.'" *Dobbs, Inc. v. Local No. 614, Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers*

9

*of Am.*, 813 F.2d 85, 88 (6th Cir. 1987) (*quoting Detroit Coil Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Lodge No. 82*, 594 F.2d 575, 580 (6th Cir. 1979).  "The court should also interpret each provision in question as part of the integrated whole.  If possible, each provision should be construed consistently with the entire document and the relative positions and purposes of the parties." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Yard-Man, Inc.*, 716 F.2d 1476, 1479-80 (6th Cir. 1983) (citations omitted).

The "parol evidence rule is not applied as strictly in the context of collective bargaining agreements, [but] it still operates to bar extrinsic evidence of an agreement inconsistent with an unambiguous writing."  *Pace v. Honolulu Disposal Serv.*, 227 F.3d 1150, 1157-58 (9th Cir. 2000) (*citing Pierce County Hotel Employees & Rest. Employees Health Trust v. Elks Lodge*, 827 F.2d 1324, 1327 (9th Cir. 1987)).  Specifically, "[e]xtrinsic evidence is inadmissible to contradict a clear contract term, but if a term is ambiguous, its interpretation depends on the parties' intent . . . in light of earlier negotiations, later conduct, related agreements, and industrywide custom."  *Elks Lodge*, 827 F.2d at 1327 (citations omitted).

///

///

10

### 2.      Construction of the CBA

The relevant provision of the CBA states as follows:

> Seniority shall not apply to any newly hired employee until the
> employee has completed six (6) months of continuous service
> with the Employer.  This period of probation may be extended
> by mutual consent of the Employer and the Union.  An
> employee who has not achieved seniority status may be
> summarily discharged.

HSI Ex. A, § 3.03.  HSI argues that "six (6) months of continuous service" is

unambiguous and should be interpreted according to its plain meaning of six

calendar months.  Because Plaintiff started his full-time position with HSI on

August 15, 2005 and was terminated on February 14, 2006, HSI argues that it

could summarily discharge Plaintiff as a matter of law and therefore did not

violate the CBA.  In comparison, Plaintiff argues that this phrase is undefined and

should be construed in favor of Plaintiff to mean 180 days.  Because Plaintiff was

terminated on his 184th day of continuous employment, Plaintiff argues that he

was no longer a probationary employee.[4]

---

[4] Prior to his offer of full-time employment, Plaintiff was a supplemental employee with
HSI from April 20, 2004 until August 14, 2005.  HSI Reply, Brennan Decl. ¶ 2.  Pursuant to the
CBA, Plaintiff's time as a supplemental employee did not count towards "six (6) months of
continuous employment" necessary for seniority.  *See* HSI Ex. A, § 4.12 ("Temporary employees
are those employees presently so classified and any employees hired thereafter.  Such temporary
employees will work under the wage, penalty and overtime provisions of this agreement but will
not be covered by the seniority provisions . . . ."), § 4.19 ("The provisions of paragraph 1.12 of
Section 1 shall apply to supplemental employees.  Such employees will work under the wage,
penalty and overtime provisions of this agreement but will not be covered by the seniority

(continued...)

The court finds the phrase "six (6) months of continuous service" unambiguous.  If HSI and ILWU meant 180 days, they could have easily used such language.  Instead, they chose "six (6) months," which, according to its plain meaning, means six calendar months.

A review of the CBA as a whole supports this construction.  HSI and ILWU chose to use "days," "months," and "years" to connote specific time periods.  For example, the CBA expressly uses "thirty (30) days" in some provisions, but never "one (1) month."  *See* HSI Ex. A, § 1.13 (discussing completion of an employee's "first thirty (30) days of employment"); § 3.14 ("Permanent vacancies in longshore gangs will be filled within thirty (30) days."). By using "thirty (30) days," there is no confusion about the duration to the extent different months include different numbers of days.  Where there are longer periods, however, the CBA generally refers to those time periods in months -- *i.e.*, six (6) months, twelve (12) months, twenty-four (24) months, and forty-eight (48) months.  *See id.* § 3.02 ("Seniority shall be considered broken by . . . (3) twenty-four (24) consecutive months layoff, and (4) forty-eight (48) months of absence by reason of illness."); *id.* § 3.06 ("No seniority accumulation beyond twelve (12)

---

[4](...continued)
provisions and will not receive any fringe benefits.").  Accordingly, the court focuses its analysis on the time period when Plaintiff was a full-time employee.

months will be permitted employees on leave of absence for other than Union business."). Using "months" rather than "days" allows for easy calculation of these time periods -- one simply has to count out the number of months. In contrast, if the term "month" meant "30 days," then both HSI and ILWU would need to count days on a calendar to determine when the term of "months" expired, and 5 days out of every 12 months would be missing from a full year. The CBA does not indicate that Defendants contemplated such an absurd result. Indeed, § 4.02 of the CBA expressly equates one year and two years to mean 12 months and 24 months, respectively. *Id.* § 4.02 ("An employee who has been in the employ of the employer for a continuous period of one year (12 months) but less than two years (24 months) shall be eligible . . . ."). It follows that a "month" equates to a calendar month.

The understanding of the parties and past practice of Defendants further confirm that the probationary period lasts for six calendar months. Both HSI and ILWU agree that they have administered the six month probationary period as requiring six calendar months. *See* HSI Reply, Brennan Decl. ¶ 3; HSI Reply, Tahara Decl. ¶ 11. Plaintiff also originally understood that he was on probation for six calendar months, because he believed he was terminated on his last day of probation. *See* Pl.'s Ex. 1, letters to HSI and ILWU officials stating

that he was terminated on his last day of probation.  Indeed, the foremen at HSI
told Plaintiff, along with the other probationary employees, that the last day of
probation would be February 14, 2006.  *See* HSI Reply, Ex. D at 73-74, 76-77.

Plaintiff's arguments for an alternative construction lack merit.  In
support of his interpretation that "six (6) months" means "180 days," Plaintiff
argues that the CBA is ambiguous such that this phrase must be interpreted in
favor of Plaintiff.  For the reasons discussed above, the court finds this phrase
unambiguous and applies its plain meaning.  However, even if the CBA were
ambiguous, the court rejects that it must be construed in Plaintiff's favor.  The
Ninth Circuit has cautioned that the concept of interpreting a contract against the
drafter may not apply to CBAs.  *See Northwest Adm'rs, Inc. v. B.V. & B.R., Inc.*,
813 F.2d 223, 226 (9th Cir. 1987) ("We recognize that interpreting a document
against the party that supplied the language is not an unusual tool in common law
contract interpretation.  But to the extent it may assist in determining the intent of
the parties, caution must be exercised when applying this doctrine to a labor
contract.").  In any event, Plaintiff was not a party to the CBA between HSI and
ILWU, and the parties to the contract (*i.e.*, HWI and ILWU) agree that "six (6)

14

months" means "six (6) calendar months."  Accordingly, the extrinsic evidence

supports the court's construction.[5]

For these reasons, the court construes the phrase "six (6) months of

continuous service" to mean six calendar months of continuous service.  Applied

here, Plaintiff started his continuous employment on August 15, 2005 and was

terminated on February 14, 2006, while he was still a probationary employee.

There is therefore no genuine issue of material fact that on February 14, 2006, HSI

was within its rights to "summarily discharge" Plaintiff without cause.

Accordingly, the court GRANTS HSI's Motion for Summary Judgment on

Plaintiff's claim that HSI violated the CBA.

## B.    Claim II:  Breach of Duty of Fair Representation

A necessary element of Plaintiff's breach of duty of fair

representation claim against ILWU is that HSI violated the CBA.  *See Skillsky v.

Lucky Stores, Inc*., 893 F.2d 1088, 1095 (9th Cir. 1990) (listing the elements of a

breach of duty of fair representation claim as including that "(1) the discharge was

in violation of the collective bargaining agreement, and (2) the union breached its

---

[5]  The court also rejects Plaintiff's attempt to rely on Hawaii state caselaw, which construes the period of "six months" as used in Hawaii Rule of Penal Procedure 48 to mean 180 days.  *See* Pl.'s Opp'n 5-6 (collecting cases).  These state law cases regarding criminal statutes offer no guidance in construing the CBA pursuant to federal labor law.

duty by more than a mere error of judgment." (*citing Hines v. Anchor Motor*

*Freight, Inc*., 424 U.S. 554, 570-71 (1976))).  Because the court finds that HSI did

not violate the CBA as a matter of law, the court GRANTS ILWU's Motion for

Summary Judgment on this claim.

## C.   Claim III:  Promissory Estoppel

Defendants argue, and the court agrees, that Plaintiff's state law claim

for promissory estoppel is preempted by federal law.

Section 301 of the LMRA preempts state law claims "based upon a

collective-bargaining agreement or [that] depend[] upon an interpretation of the

agreement." *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748 (9th Cir.

1993) (citation omitted).  In other words, "when resolution of a state-law claim is

substantially dependent upon analysis of the terms of an agreement made between

parties in a labor contract, the claim must either be treated as a § 301 claim, or

dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v.

Lueck*, 471 U.S. 202, 220 (1985) (citation omitted); *Romero v. San Pedro Forklift,

Inc*., 2008 WL 313063, at *2 (9th Cir. Feb. 1, 2008) ("Section 301 preempts state

law claims "founded directly on rights created by collective-bargaining

agreements, and also claims substantially dependent on analysis of a collective-

16

bargaining agreement.'" (*quoting Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987))).

     "The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc). "The determinative question 'is whether the state law factual inquiry . . . turn[s] on the meaning of any provision of the collective-bargaining agreement.'" *Ward v. Circus Circus Casinos, Inc.*, 473 F.3d 994, 998 (9th Cir. 2007) (*quoting Galvez v. Kuhn*, 933 F.2d 773, 776 (9th Cir. 1991)). However, "[a] provision in a collective bargaining agreement will not trigger preemption when it is only potentially relevant to the resolution of state law claims." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 990-91 (9th Cir. 2007) (*citing Humble v. Boeing Co.*, 305 F.3d 1004, 1010 (9th Cir. 2002) (other citation omitted)). "[A]lleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim:  adjudication of the claim must require interpretation of a provision of the CBA." *Cramer*, 255 F.3d at 691-92.

     The elements of Plaintiff's promissory estoppel claim include that: (1) there was a promise; (2) Defendants, at the time they made the promise, foresaw that Plaintiff would rely upon the promise; (3) Plaintiff relied upon the

promise; and (4) enforcement of the promise is necessary to avoid injustice.

*Gonsalves v. Nissan Motor Corp.*, 100 Haw. 149, 164-65, 58 P.3d 1196, 1211-12

(2002).  As admitted by Plaintiff, he bases this claim on Defendants' alleged offer

of employment upon which he detrimentally relied.  *See* Pl.'s Opp'n 12 ("Lalau

states a claim for promissory estoppel in that it was reasonable for Lalau to have

relied to his detriment on the Defendants' promise of employment."); HSI Reply

Ex. D at 91 (stating that the only promise made to him is a letter offering him

employment with HSI and that he felt that the promise was not fulfilled because he

was later terminated).  By its very terms, any promise of employment by HSI to an

ILWU member is governed by the CBA.  *See* HSI Ex. A, § 1.02 ("The agreement

is signed by the Union on behalf of all employees in the collective bargaining unit,

and all such employees are required to abide by the agreement negotiated in their

behalf.").  The CBA outlines the nature and scope of HSI's "promise" of

employment to Plaintiff, and relevant here, allows HSI to summarily dismiss

Plaintiff within his first six months of continuous employment.  Stated differently,

there was no promise for continuous employment during Plaintiff's first six

months of full-time employment.  As is evident from the above, the court would

need to interpret the CBA to determine whether HSI terminated Plaintiff during

his first six months of continuous employment.

18

Plaintiff, with no persuasive support,[6] argues that "the CBA is irrelevant to Plaintiff's promissory estoppel claim; Plaintiff left his career with public safety and was terminated loosing [sic] all his service credit; it was reasonable that HSI's offer of employment would lead to this damage . . . ." Pl.'s Opp'n 17-18.  The court disagrees that the CBA is irrelevant.  As described above, Plaintiff's claim is solely predicated upon Defendants' "promise" of employment, the terms of which are governed by the CBA.[7]  Because Plaintiff's promissory estoppel claim will require interpretation of the CBA, it is preempted by § 301 of the LMRA.  Accordingly, the court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's promissory estoppel claim.[8]

///

///

///

---

[6] Plaintiff cites *Ravelo v. County of Hawaii*, 66 Haw. 194, 658 P.2d 883 (1983), for the proposition that he has a separate state-law claim.  *Ravelo* did not involve a collective bargaining agreement, and is otherwise distinguishable on its facts because Ravelo never started the employment she was promised.

[7] The court notes that to the extent that Plaintiff asserts that he relied on Defendants' "offer" of employment in resigning from his position at Sheriff's Division of the Department of Public Safety, it would appear that Defendants fulfilled their promise when Plaintiff started work as a basic longshore employee on August 15, 2005.

[8] Because the court GRANTS Defendants' Motions for Summary Judgment on all claims, the court DENIES Plaintiff's Cross-Motion for Summary Judgment.

## D.   HSI's Rule 11 Motion for Sanctions

HSI seeks Rule 11 sanctions against Plaintiff for filing an action that

he should have known is unsupported in law and fact.[9]  Federal Rule of Civil

Procedure 11(b) requires that parties present arguments that are warranted by the

law and non-frivolous:

> By presenting to the court a pleading, written motion, or
> other paper -- whether by signing, filing, submitting, or
> later advocating it -- an attorney or unrepresented party
> certifies that to the best of the person's knowledge,
> information, and belief, formed after an inquiry
> reasonable under the circumstances:
> . . .
>> (2) the claims, defenses, and other legal
>> contentions are warranted by existing law or by a
>> nonfrivolous argument for extending, modifying,
>> or reversing existing law or for establishing new
>> law . . . .

Rule 11 applies to all pleadings, written motions and other papers

presented to the court.  Fed. R. Civ. P. 11(a).  In determining whether a party has

violated Rule 11, the court applies an objective reasonableness standard.  *Yagman*

*v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993).  A showing of subjective bad

faith is not required.  *See Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994)

(noting that sanctions cannot be avoided by the "empty head, pure heart" defense);

---

[9]  During the hearing, the parties agreed that HSI had complied with Rule 11's safe harbor
notice provision.

*Zaldivar v. City of L.A.*, 780 F.2d 823, 831 (9th Cir. 1986) (noting that the

certification requirements of Rule 11 are violated "if the paper filed . . . is

frivolous, legally unreasonable or without factual foundation, even though . . . not

filed in subjective bad faith").

Violation of Rule 11(b) can, after notice and reasonable opportunity

to respond, result in sanctions:

> If, after notice and a reasonable opportunity to respond,
> the court determines that Rule 11(b) has been violated,
> the court may impose an appropriate sanction on any
> attorney, law firm, or party that violated the rule or is
> responsible for the violation.  Absent exceptional
> circumstances, a law firm must be held jointly
> responsible for a violation committed by its partner,
> associate, or employee.

Fed. R. Civ. P. 11(c); *see also* L.R. 11.1 (allowing the court to sanction a party for

failure to comply with the Local Rules).

Plaintiff's counsel argues that he conducted a reasonable inquiry into

the facts and law, and was satisfied that this action was grounded in both when he

filed his Complaint.  *See* Pl.'s Rule 11 Opp'n 4-5.  Indeed, in opposition to

Defendants' Motions for Summary Judgment, Plaintiff proffered an interpretation

of the CBA that would support his claims.  While the court rejected Plaintiff's

construction as contrary to federal labor law and wholly unsupported by the

evidence on the record, the court does not find that Plaintiff's position was so unreasonable as to be considered frivolous.  Accordingly, the court DENIES HSI's Motion for Rule 11 sanctions.

## V.  <u>CONCLUSION</u>

For the reasons discussed above, the court GRANTS HSI's Motion for Summary Judgment, GRANTS ILWU's Motion for Summary Judgment, DENIES Plaintiff's Cross-Motion for Summary Judgment, and DENIES HSI's Motion for Rule 11 Sanctions.  Because no counts of the Complaint remain, the court ORDERS the Clerk of Court to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 6, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Lalau v. Hawaii Stevedores, Inc.*, Civ. No.  06-00414 JMS/LEK; Order: (1) Granting Hawaii Stevedores, Inc.'s Motion for Summary Judgment; (2) Granting International Longshore & Warehouse Union, Local 142's Motion for Summary Judgment; (3) Denying Plaintiff's Cross-motion for Summary Judgment; and (4) Denying Hawaii Stevedores, Inc.'s Motion for Rule 11 Sanctions